MEMORANDUM OPINION
 

 BELEW, District Judge.
 

 I. BACKGROUND
 

 On May 29, 1981, the Texas Legislature by enacting House Bill 733 Texas Laws 1981, Chapter 277 at 742, amended the Texas Controlled Substances Act, Tex.Rev.Civ. Stat.Ann. Art. 4476-15 (Vernon 1976) and such Bill was signed by the Governor of the State of Texas, William P. Clements, Jr., on June 1, 1981, to become effective on September 1, 1981.
 

 On August 25, 1981, two Plaintiffs, Tom D. Atkins and Jerry Schults, owners of two head shops in the Dallas/Fort Worth area, filed suit seeking to enjoin the enforcement of this statute as amended, against William Clements, Governor of the State of Texas; Mark White, Attorney General; Tim Curry, District Attorney of Tarrant County; Paul Isham, City Attorney of Fort Worth; Lon Evans, Sheriff of Tarrant County; Herbert Hopkins, Chief of Police of Fort Worth; and James P. Adams, Chief of the Department of Public Safety of the State of Texas.
 

 On September 1, 1981, this Court granted a Temporary Restraining Order restraining the Defendants from the enforcement of
 
 *732
 
 that statute in their areas of jurisdiction. Three days later on September 4, 1981, the two original Plaintiffs were joined in their action by fifty-three other Plaintiffs, or a total of fifty-five Plaintiffs seeking to restrain over 200 .Defendants as law enforcement officials.
 

 On September 4, this Court granted a Temporary Restraining Order protecting all fifty-five Plaintiffs from enforcement of the statute by the 200 + Defendants named in their suit. That restraining order was effective for ten days up until September 14, 1981, at which time this Court granted a ten day extension to be effective until September 24, 1981. As a result of the legal uncertainty of a third extension of the restraining order without the consent or agreement by all parties, this Court felt it was incumbent to hold a hearing before the expiration of the second restraining order, and make its determination within that time on the constitutionality of the amendment.
 

 II. PLAINTIFF ALLEGATIONS
 

 The named Plaintiffs operate businesses known as “head shops,” where they sell what is more commonly known as drug paraphernalia. Although the Plaintiffs collectively allege that what they sell consists mainly of records, magazines, posters, and other novelty items; in fact, articles are sold that can be used in some connection with drugs.
 

 Plaintiffs’ complaint alleges the statute deprives them of their right of free speech, of their right to due process, and equal protection under the laws, all in violation of their rights guaranteed by the commerce and contract clauses of the United States Constitution, the due process and equal protection clauses of the 14th Amendment to the United States Constitution, the 1st Amendment to the United States Constitution, and the Bill of Attainder Clause of the United States Constitution.
 

 Specifically, Plaintiffs allege a violation of the due process clause, under the 5th and 14th Amendments, in that the statutory means employed are unreasonable and unworkable methods to prevent the use of controlled substances, or to achieve any legitimate state purpose as any such action under the amendments would be arbitrary, irrational, and capricious. Secondly, they allege a violation of the equal protection clause in that the statute allows for making unreasonable and impermissible classifications, distinguishing between what is commonly known as head shops and other legitimate businesses selling similar apparati and equipment and as such, discriminates against and constitutes an invidious classification of the plaintiffs.
 

 Third, there is a substantial, and unreasonable, and impermissible interference with interstate commerce.
 

 Fourth, the statute fails to give adequate guidance resulting in it being so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.
 

 Fifth, the advertising ban included in the statute amounts to a violation of their 1st Amendment rights, or their right to free speech.
 

 This Court notes the Plaintiffs have dropped their class certification request and their right to damages. Generally, what the Plaintiffs seek is a preliminary and permanent injunction preventing the named defendants from, at any time, any where, in the state of Texas, enforcing this statute against them collectively or individually.
 

 III. DEFENDANT ALLEGATIONS
 

 The Defendants have filed various motions. Those include motions to dismiss certain Defendants from the case as not proper parties, and to dismiss the case generally on abstention grounds, and, of course, motions opposing the enjoining of the enforcement of the statute.
 

 IV. JURISDICTION
 

 Jurisdiction of this case is asserted on 42 U.S.C. §§ 1983, and 1988, in conjunction with 28 U.S.C. §§ 1343, 2201, and 2202. Thus, Plaintiffs’ claims are asserted both directly under the Federal Constitution and under the Civil Rights Act as passed by the
 
 *733
 
 United States Congress. This Court notes, therefore, probable jurisdiction.
 

 V. ABSTENTION
 

 A district court has discretion to abstain. This Court is aware of the principle that state courts generally deserve the first opportunity to decide a matter like this, as principle expositors of state law. However, this Court notes there are no pending state criminal proceedings,
 
 see Younger v. Harris,
 
 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 

 Abstention is the exception, not the rule, and should only be applied when the Court is convinced that at least one of the
 
 Pullman
 

 [1]
 
 factors is present,
 
 see High 01’ Times, Inc. v. Busbee,
 
 621 F.2d 135 (5th Cir. 1980). This Court does not want to deny Plaintiff his guaranteed federal forum for adjudication of his constitutional rights. Nevertheless, a state Court interpretation in a case like this would not significantly alter the predominant federal questions remaining. They would stay unanswered and unresolved. Questions of state law have a minimal impact on the issues before this Court. Therefore, there has been no compelling reason for abstention shown.
 

 VI. ARTICLE III REQUIREMENT
 

 Before reaching the merits of Plaintiffs’ constitutional challenges, the Court must also satisfy itself that the Plaintiffs have met the Article III requirements of an actual case or controversy. Under Art. Ill, Sec. 1 of the Constitution, there must exist a true threat of prosecution. This Court finds such in this case. A genuine threat of criminal prosecution, under legislation that allegedly is constitutionally defective, does present an actual case or controversy. The Declaratory Judgment Act represents Congress’ judgment that, in these circumstances, it is unfair and may deter the exercise of constitutionally protected rights to compel a person to wait for an actual arrest or prosecution before allowing that person to test legislation in court. This Court finds in the situation before it, the threat of prosecution is not imaginary, speculative, or chimerical and, therefore, Plaintiff has demonstrated an existence of the Article III controversy.
 

 The record clearly shows, and the Defendants have openly admitted, as is their duty, that the statute would be enforced against Plaintiffs to the fullest extent possible.
 

 VII. THE AMENDED STATUTE
 

 Here, as set out, is the amended statute:
 

 SECTION 1. Section 1.02, Texas Controlled Substances Act, as amended (Article 4476-15, Vernon’s Texas Civil Statutes), is amended by amending Subdivision (8) and adding Subdivision (29) to read as follows:
 

 (8) “Deliver” or “delivery” means the actual or constructive transfer from one person to another of a controlled substance
 
 or drug paraphernalia,
 
 whether or not there is an agency relationship. For purposes of this Act, it also includes an offer to sell a controlled substance
 
 or drug paraphernalia.
 
 Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree.
 

 (29) “Drug paraphernalia” means equipment, a product, or a material of any kind that is used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, or concealing a controlled substance in violation of this Act or in injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Act. It includes, but is not limited to:
 

 (A) a kit used or intended for use in planting, propagating, cultivating, growing, or harvesting any species of plant that is a controlled substance or from which a controlled substance can be derived;
 

 (B) a kit used or intended for use in manufacturing, compounding, converting, producing, processing, or preparing a controlled substance;
 

 
 *734
 
 (C) an isomerization device used or intended for use in increasing the potency of any species of plant that is a controlled substance;
 

 (D) testing equipment used or intended for use in identifying or in analyzing the strength, effectiveness, or purity of a controlled substance;
 

 (E) a scale or balance used or intended for use in weighing or measuring a controlled substance;
 

 (F) a dilutent or adulterant, such as quinine hydrochloride, mannitol, mannite, dextrose, or lactose, used or intended for use in cutting a controlled substance;
 

 (G) a separation gin or sifter used or intended for use in removing twigs and seeds from or in otherwise cleaning or refining marihuana;
 

 (H) a blender, bowl, container, spoon, or mixing device used or intended for use in compounding a controlled substance;
 

 (I) a capsule, balloon, envelope, or other container used or intended for use in packaging small quantities of a controlled substance;
 

 (J) a container or other object used or intended for use in storing or concealing a controlled substance.
 

 (F) a hypodermic syringe, needle, or other object used or intended for use in parenterally injecting a controlled substance into the human body; and
 

 (L) an object used or intended for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:
 

 (i) a metal, wooden, acrylic, glass, stone, plastic, or ceramic pipe with or without a screen, permanent screen, hashish head, or punctured metal bowl;
 

 (ii) a water pipe;
 

 (iii) a carburetion tube or device;
 

 (iv) a smoking or carburetion mask;
 

 (v) a chamber pipe;
 

 (vi) a carburetor pipe;
 

 (vii) an electric pipe;
 

 (viii) an air-driver pipe;
 

 (ix) a chillum;
 

 (x) a bong; or
 

 (xi) an ice pipe or chiller.
 

 SECTION 2. Section 4.07, Texas Controlled Substances Act (Article 4476-15, Vernon’s Texas Civil Statutes), is amended to read as follows:
 

 Sec. 4.07. POSSESSION OR DELIVERY OF DRUG PARAPHERNALIA
 

 (a) A person commits an offense if he knowingly or intentionally uses or possesses with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled substance in violation of this Act or to inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act.
 

 (b) A person commits an offense if he knowingly or intentionally delivers, possesses with intent to deliver, or manufactures with intent to deliver drug paraphernalia knowing that the person who receives or who is intended to receive the drug paraphernalia intends that it be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled substance in violation of this Act or to inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act.
 

 (c) A person commits an offense if he commits an offense under Subsection (b) of this section, is 18 years of age or older, and the person who receives or who is intended to receive the drug paraphernalia is under 18 years of age and at least three years younger than the actor.
 

 (d) An offense under Subsection (a) of this section is a Class C misdemeanor, unless the actor has been convicted previously under Subsection (a), in which event it is a Class B misdemeanor.
 

 (e) An offense under Subsection (b) of this section is a Class A misdemeanor. If it be shown on a trial for violation of Subsec
 
 *735
 
 tion (b) of this section, that the defendant has been previously convicted of Subsection (b) or (c) of this section, then an offense under Subsection (b) of this section is a felony of the third degree.
 

 (f) An offense under Subsection (c) of this section is a felony of the third degree.
 

 SECTION 3. Section 5.03(a), Texas Controlled Substances Act, as amended (Article 4476-15, Vernon’s Texas Civil Statutes), is amended to read as follows:
 

 (а) The following are subject to forfeiture as authorized by this subchapter;
 

 (1) all controlled substances that are or have been manufactured, distributed, dispensed, delivered, acquired, obtained, or possessed in violation of this Act;
 

 (2) all raw materials, products, and equipment of any kind that are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this Act;
 

 (3) all property that is used, or intended for use, as a container for property described in paragraph (1) or (2) of this subsection;
 

 (4) all books, records, and research products and materials, including formulas, microfilm, tapes, and data that are used, or intended for use, in violation of this Act;
 

 (5) any conveyance, including aircraft, vehicles, vessels, trailers, and railroad cars, that is used or intended for use to transport for delivery or in any manner facilitate the transportation for delivery of any property described in paragraph (1), (2), or (3) of this subsection, provided that no conveyance used by any person as a common carrier shall be forfeited under this subchapter unless the owner or other person in charge of the conveyance is a consenting party or privy to a violation of this Act, and no conveyance shall be subject to forfeiture if the delivery involved is an offer to sell;
 

 (б) all money derived from the sale, manufacture, distribution, dispensation, delivery, or other commercial undertaking violative of this Act; and
 

 (7) all drug paraphernalia.
 

 SECTION 4. The Texas Controlled Substances Act, as amended (Article 4476-15, Vernon’s Texas Civil Statutes), is amended by adding Section 5.15 to read as follows:
 

 Sec. 5.15. EVIDENTIARY RULES. In considering whether an item is drug paraphernalia under this Act, a court or other authority shall consider, in addition to all other logically relevant factors, but subject to current rules of evidence;
 

 (1) statements by an owner or by anyone in control of the object concerning its use;
 

 (2) the existence of any residue of controlled substance on the object;
 

 (3) direct or circumstantial evidence of the intent of an owner or of anyone in control of the object to deliver it to persons whom he knows or should reasonably know intend to use the object to facilitate a violation of this Act (the innocence of an owner or of anyone in control of the object as to a direct violation of this Act does not prevent a finding that the object is intended for use or designed for use as drug paraphernalia);
 

 (4) instructions, oral or written, provided with the object concerning its use;
 

 (5) descriptive materials accompanying the object which explain or depict its use;
 

 (6) the manner in which the object is displayed for sale;
 

 (7) whether the owner or anyone in control of the object is a supplier of similar or related items to the community, such as a licensed distributor or dealer of tobacco products;
 

 (8) direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;
 

 (9) the existence and scope of uses for the object in the community;
 

 (10) the physical design characteristics of the item; and
 

 (11) expert testimony concerning its use.
 

 Since 1978, a substantial number of states and municipalities have adopted statutes and ordinances prohibiting, in varying degrees, the possession and sale of drug paraphernalia. Many of these attempts at such
 
 *736
 
 legislation were held unconstitutional by the federal courts
 
 [2]
 
 primarily on the grounds of vagueness and overbreadth, though some were able to pass constitutional muster.
 
 [3]
 
 In response to those Court decisions, the United States Department of Justice, in August 1979, drafted a Model Drug Paraphernalia Act, which has been widely adopted. Most Courts which considered the statutes or ordinances based upon the model act, did in fact uphold its validity,
 
 [4]
 
 though not all.
 
 [5]
 
 Three Circuit Courts of Appeal, when faced with statutory ordinances similar to the Model Drug Paraphernalia Act held them constitutional.
 
 [6]
 
 It has only been the Sixth Circuit which has failed to go along with that analysis.
 
 [7]
 
 Because of this great flurry of cases rushing into the Courts to test the statutes’ or ordinances’ constitutionality,
 
 [8]
 
 the State of Texas wisely sat back and waited for the other cases to be decided. The State was then able to see which provisions were found constitutional, and which would be struck down as unconstitutional, and subsequently write a statute that would pass judicial scrutiny. As stated earlier, there are three Courts of Appeal which have upheld legislation based upon the Model Drug Paraphernalia Act. It has only been the Sixth Circuit, in the case,
 
 Record Revolution No. 6, Inc. v. City of Parma,
 
 638 F.2d 916 (6th Cir. 1980), vacated and remanded, 49 U.S.Law Week. 3877, No. 80-1507 (May 26, 1981), which has determined that similar legislation was, in fact, defective. The State of Texas absorbed all of this and when writing its statute, incorporated these judgments. The
 
 *737
 
 State of Texas differentiated its statute from the one struck down in the
 
 City of Parma
 
 on four specific points:
 

 (1) it eliminated the
 
 designed for use
 
 phrase which had been characterized as vague and overbroad;
 

 (2) it listed only as examples, and not as a definitive group, the listed items as drug paraphernalia, which might render the statute vague and overbroad;
 

 (3) it eliminated the section on prohibition of advertisement of such drug paraphernalia; and
 

 (4) it eliminated the phrase
 
 “knowing or under circumstances where one reasonably should know”
 
 that had been found to violate the 1st Amendment right of free speech. Therefore, it is clear that the drafters of House Bill 733 paid careful attention to the Court’s decision in
 
 City of Parma,
 
 and amended their bill so as to remove any judicial objections.
 

 VIII. MERITS OF THE CASE
 

 Plaintiffs carry a difficult burden in this case. There is a presumption of validity to the statute. The State is not required to enact a perfect statute, or even utilize the best possible language,in order for the statute to be valid. In fact, almost all statutes will have some inherent vagueness because of the uncertainties of the English language.
 

 There are essentially five grounds which the Plaintiffs assert as reasons for finding the statute unconstitutional. They are (1) vagueness, (2) equal protection, (3) due process, (4) burden on interstate commerce, and (5) free speech.
 

 A. VAGUENESS
 

 A federal Court must take a state statute as written and cannot find the statute constitutional by remedying any defects which render it imprecise. It must determine what a state statute means before judging its facial constitutionality. Plaintiffs’ principle contention is that the statute is unconstitutionally vague. In
 
 Grayned v. City of Rockford,
 
 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972), the Supreme Court stated,
 

 It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissively delegates basic policy matters to policeman, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute “abut[s] upon sensitive areas of basic First Amendment freedoms,” it “operates to inhibit the exercise of those freedoms.” Uncertain meanings inevitably lead citizens to “steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.”
 

 Simply stated, a law must provide 1) notice of what is prohibited and 2) guidelines for enforcement. Vagueness fails to meet due process standards when the linguistic expression of the law is such as to not give fair notice and due warning of that which is prohibited. Furthermore, when a criminal statute is involved, all persons are entitled to be informed as to what the statute commands or forbids. Fundamental fairness requires that persons not be compelled to guess at their own peril the meaning and application of a statute, i.e., to set out prohibited conduct in terms people of ordinary intelligence can readily understand. The Texas statute gives a fair warning of the forbidden conduct. It specifies that' items are innocent until coupled with the intent to use those items with a controlled substance. Therefore, no innocent item can be impermissively brought into the State’s control. That is, no objects
 
 *738
 
 under the statute are per se drug paraphernalia. In other words, the statute avoids vagueness by requiring the statutory definition of drug paraphernalia to include the subjective intent on the part of the possessor or seller. In all probability, the requirement that criminal intent be proven as an essential element of a paraphernalia offense favors the Defendants, in as much as there may be no overt act, such as blatant demonstration, or instruction as to an item’s drug related use, to supplement the particularly difficult evidentiary burden of proving intent. It is accordingly clear that the narrowly drawn ordinance here at issue, clearly defines the conduct in terms of, first, specific intent, and second, actual or constructive knowledge, and therefore, it withstands challenge on the ground of vagueness. There is a presumption of legislative intent to act within constitutional bounds. This Court finds the statute prescribes sufficiently precise standards so that basic policy decisions are not impermissively delegated to law enforcement officials. The requirement of knowledge on the part of the Defendant, when coupled with use or intended for use, in the definition of drug paraphernalia, provides adequate notice.
 

 B. EQUAL PROTECTION
 

 Plaintiffs claim that the statute creates the possibility of arbitrary and discriminatory enforcement. An ordinance must provide adequate guidelines for and constraints upon those who apply it; judges, juries, and law enforcement officers must have some legally fixed standard by which they decide what is prohibited and what is not in each particular case. However, it is not necessary for reasonable men to consistently reach the same conclusion in applying objective standards to a given fact situation. In the present case, the Texas Statute has sufficient standards to guard against arbitrary, erratic, and discriminatory arrests, prosecutions, and convictions. The statute was narrowly drawn. It applies only to commercial establishments and to fairly well defined products. The Act provides for certain guidelines, that is, logical and relevant indicators of specific intent, for Courts and law enforcement officials. Thus, on its face, the Texas statute creates no classifications. In any event, even if stores dealing primarily in drug paraphernalia were subject to special treatment by the Act, the classification would be rationally related to a legitimate state purpose. Head shops have been recognized as stores likely to sell drug paraphernalia because they, by definition, sell those objectively definable items. The Texas statute provides the constitutionally required fair warning of what is prohibited and adequate standards by which that conduct may be measured.
 

 C. DUE PROCESS
 

 Plaintiffs allege that the statute violates substantive due process. Substantive due process scrutiny of a law involves the balancing of a myriad of interests, including the character of the right allegedly infringed, the extent of infringement, the importance of the government interest at issue, and the government’s consideration of less burdensome alternative means to accomplish the same goal. When no fundamental right is involved, as in this case, the inquiry upon substantive due process parallels a traditional equal protection analysis, which requires only that the statute in question be rationally related to a legitimate state interest. The legislation need not necessarily further the state scheme to any particular degree, nor must the law address all facets of a problem. So long as a law bears a rational relation to the evil the state properly seeks to eliminate, it is not this Court’s function to substitute its judgment for that of the legislature. The law does not need in every respect to be logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that a particular legal measure was a rational way to correct it.
 

 Availability of drugs has reached epidemic levels. An entire industry has developed which promotes, even glamourizes, the illegal use of drugs, worst of all by
 
 *739
 
 teenagers and children. The purpose of this statute was to curtail drug use and drug abuse. Its aim is to prohibit the selling and possession of devices which tend to facilitate, enhance, condone, and render acceptable the use of illegal drugs. This Court, therefore, finds a rational relation between banning drug paraphernalia and curbing drug abuse. The law appears to be a plausible approach to a legitimate state goal, which is all that this Court need determine.
 

 D. INTERSTATE COMMERCE
 

 Plaintiffs challenge the statute on the ground that it will impermissively interfere with interstate commerce. The relevant test to be applied is 1) whether the legislation serves a legitimate local public interest; 2) whether the legislation has only an incidental effect on interstate commerce; and 3) if the first two tests are met, whether the burden on interstate commerce is clearly excessive in relation to the local benefits. This Court determines it is clear that the instant case does not involve interstate commerce, that there is no burden or discriminatory impact upon interstate commerce, and that even if there is an incidental effect upon interstate commerce, that this does not constitute a violation of the commerce clause. In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution, when conferring upon Congress the regulation of commerce, never intended to cut the states off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. The statute here involved is a measure directly addressed to the protection of the public health, and the statute thus falls within the most traditional concept of what is compendiously known as the police power. The legitimacy of state legislation in this precise area has been expressly established. Furthermore, the statute is applied equally, i.e., there is no discrimination against goods shipped in-state versus goods shipped out-of-state.
 

 E. FREE SPEECH
 

 Plaintiffs incorrectly cited a violation of First Amendment rights based on other statutes containing a ban on the advertising of drug paraphernalia. The Texas statute, in an attempt to comport with
 
 The City of Parma
 
 decision, eliminated that particular provision and so it has no bearing upon this case.
 

 IX. CONCLUSION
 

 Therefore, this Court perceives no facial constitutional infirmity. The Plaintiffs’ facial attack fails because this Court finds the statute does indeed give fair notice. We must not make it impossible for a legislature to draft legislation. This is a major concern and has disproportionately, perhaps, weighted this Court. In
 
 World Imports, Inc. v. Woodbridge Tp.,
 
 493 F.Supp. 429, 431-32 (D.N.J.1980), a judge who had the occasion to consider the validity of both an ordinance modeled after the Model Drug Paraphernalia Act, and one not, had this to say on the comparison of the two:
 

 “The Woodbridge ordinance, which is the subject of the present suit, is very different from the Lawrence Township ordinance, which I held to be invalid in the
 
 Record Museum
 
 case. The Wood-bridge ordinance is based upon the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the United States Department of Justice. It is carefully drafted and, in my opinion, defines with precision what is meant by drug paraphernalia and the conduct which is prescribed.”
 

 The Texas Legislature carefully attempted to draft a statute which would be constitutionally valid. It is a statute which is fair to its citizens. A state has the power and right to write an ordinance to discourage the availability of drugs and the acceptance of drug use by prohibiting the sale of drug-related devices. Within the above-enumerated guidelines, this Court will not stand in the way of the Legislature in an attempt to pass such legislation.
 

 
 *740
 
 Since Plaintiffs intend to appeal and will request the Court of Appeals to issue an injunction or stay order pending appeal, the Court hereby extends the Restraining Order heretofore entered by it and/or stays the enforcement of its Judgment through October 4, 1981, or until the Court of Appeals for the Fifth Circuit acts upon Plaintiffs’ application for an injunction pending appeal, whichever occurs sooner.
 

 The Court would like to have written a more detailed, thorough opinion; • however, because of the expediency of the matter, the Court felt an obligation to produce this opinion in a limited time.
 

 IT IS SO ORDERED.
 

 [1]
 

 .
 
 Railroad Commission v. Pullman Co.,
 
 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
 

 [2]
 

 .
 
 The Flipside, Etc. v. Village of Hoffman Estates,
 
 639 F.2d 373 (7th Cir. 1981);
 
 Geiger
 
 v.
 
 City of Eagan,
 
 618 F.2d 26 (8th Cir. 1980);
 
 Lazy, J. Ltd. v. The Borough of State College,
 
 No. 80-1167 (M.D.Penn.1981);
 
 General Stores, Inc. v. City of Albuquerque,
 
 No. 81-0027M, Civil (D.N.Mex., March 23, 1981);
 
 Robert Forrest Weiler v. Cleo Carpenter, et al.,
 
 507 F.Supp. 837 (D.N.Mex. 1981);
 
 Back Door Records v. City of Jacksonville,
 
 515 F.Supp. 857 (E.D.Ark.1981);
 
 Record Head Shop Corp. v.
 
 Sachen, 498 F.Supp. 88 (E.D.Wise. 1980);
 
 Magnani v. City of Ames, Iowa,
 
 493 F.Supp. 1003 (S.D.Iowa C.D.1980);
 
 Music Stop, Inc. v. City of Ferndale,
 
 488 F.Supp. 390 (E.D.Mich.S.D. 1980);
 
 Knoedler v. Roxbury Tp.,
 
 485 F.Supp. 990 (D.N.J.1980);
 
 Florida Businessmen for Free Enterprise v. Pinellas County,
 
 No. 80-482 (M.D.Fla. May 15, 1980);
 
 Smith v. Roark,
 
 No. 80-2110 (S.D.W.Va. May 13, 1980);
 
 Indiana Chapter, N.O.R.M.L., Inc. v. Sendak,
 
 No. TH 75-142-C (S.D.lnd., Feb. 4, 1980);
 
 Record Museum v. Lawrence Tp.,
 
 481 F.Supp. 768 (D.N.J. 1979) ;
 
 Bambu Sales, Inc. v. Gibson,
 
 474 F.Supp. 1297 (D.N.J.1979);
 
 Weingart v. Town of Oyster Bay,
 
 No. 79-C-2932 (E.D.N.Y., Dec. 17, 1979);
 
 Santilli v. Hamilton Township,
 
 Civ. No. 79-1301 (D.N.J., June 1, 1979).
 

 [3]
 

 .
 
 Florida Businessman for Free Enterprise v. State of Florida,
 
 499 F.Supp. 346 (N.D.Fla. 1980) ;
 
 Levas v. City of Antioch,
 
 No. 80-C-1574 (N.D.Ill., Aug. 15, 1980);
 
 Tobacco Road v. City of Novi,
 
 490 F.Supp. 537 (E.D.Mich.1979);
 
 Anthony J. Cardarella v. City of Overland Park, Kansas,
 
 No. 86246 (Dist.Ct., Johnson County, Dec. 3, 1979).
 

 [4]
 

 .
 
 Nova Records, Inc. v. Sendak,
 
 504 F.Supp. 938 (S.D.lnd. 1980);
 
 New England Accessories Trade Ass’n. Inc. v. Donald Browne,
 
 502 F.Supp. 1245 (D.Conn. 1980);
 
 Tobacco Accessories and Novelty Etc. v. Treen,
 
 501 F.Supp. 168 (E.D.La.1980);
 
 Florida Businessmen, Etc. v. State of Florida,
 
 499 F.Supp. 346 (N.D.Fla. 1980) ;
 
 Delaware Accessories Trade Ass’n. v. Gebelein,
 
 497 F.Supp. 289 (D.Del.1980);
 
 World Imports, Inc. v. Woodbridge Tp.,
 
 493 F.Supp. 428 (D.N.J.1980);
 
 New England Accessories Trade Assoc., Inc. v. City of Nashua,
 
 No. 80-5300 (D.N.H. Dec. 8, 1980);
 
 Mid-Atlantic Trade Accessories Trade Ass’n. v. Maryland,
 
 500 F.Supp. 834 (D.Md.1980);
 
 Florida Businessmen for Free Enterprise v. City of Hollywood,
 
 No. 80-6157-Civ-HCR (S.D.Fla., Aug. 29, 1980);
 
 Record Head, Inc. v. Olson,
 
 476 F.Supp. 366 (D.N.Dak.1979).
 

 [5]
 

 . Franza v.
 
 Carey,
 
 518 F.Supp. 324 (S.D.N.Y. 1981) ;
 
 Information Management Services, Inc. v. Borough of Pleasant Hills,
 
 24 Cr.L.Rep. 2212 (W.Pa., April 23, 1981).
 

 [6]
 

 .
 
 Franza v. County of Westchester,
 
 No. 81-7211 (2nd Cir., Aug. 18, 1981);
 
 Casbah, Inc.
 
 v.
 
 Thone,
 
 651 F.2d 551 (8th Cir. 1981);
 
 Hejira Corp. v. McFarlane,
 
 660 F.2d 1356 (10th Cir. 1981).
 

 [7]
 

 .
 
 Record Revolution No. 6, Inc. v. City of Parma,
 
 638 F.2d 916 (6th Cir. 1980), vacated and remanded, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981).
 

 [8]
 

 . Two District Courts within the same division reached opposite conclusions.
 
 Cf. Tobacco Road v. City of Novi,
 
 490 F.Supp. 537 (E.D. Mich.S.D.1979) (upholding City of Novi ordinance) with
 
 Music Stop, Inc. v. City of Ferndale,
 
 488 F.Supp. 390 (E.D.Mich.S.D. 1980) (striking down City of Ferndale ordinance).