TOBACCO ACCESSORIES AND NOVEL-
TY CRAFTSMEN MERCHANTS ASSO-
CIATION OF LOUISIANA, et al., Plain-
tiffs-Appellants,

v.

David C. TREEN, as Governor of Louisi-
ana, et al., Defendants-Appellees.

No. 80–3854.

United States Court of Appeals,
Fifth Circuit.

July 29, 1982.

William E. Rittenberg, New Orleans, La., Peter Meyers, Washington, D. C., Frederick J. King, Jr., New Orleans, La., for plaintiffs-appellants.

Laughlin McDonald, Atlanta, Ga., for amicus curiae—American Civil Liberties Union.

Kendall L. Vick, Asst. Atty. Gen., Paul A. Eckert, Staff Atty., New Orleans, La., for defendants-appellees.

Before COLEMAN, POLITZ and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

This case presents a pre-enforcement facial challenge to the constitutionality of Louisiana's Drug Paraphernalia Law, La. R.S. 40:1031–36 (Louisiana Act). Invoking 42 U.S.C. §§ 1983, 1985 and 28 U.S.C. §§ 2201 and 2202, plaintiffs[1] charge that the Louisiana Act is vague and overbroad, not rationally related to a legitimate state interest and infringes on first amendment guarantees. The district court upheld its validity. 501 F.Supp. 168. We affirm.

---

1. Suit was filed by: (1) an association, Tobacco Accessories and Novelty Craftsmen Merchants Association of Louisiana; (2) seven corporations—A Better Place, Inc.; Entertainment Repertoire Associates Corporation; Warehouse Records and Tapes Distributing Co., Inc.; The Establishment, Inc.; The Mushroom, Inc.; Treehouse, Inc.; The Leather Pouch, Inc.; and (3) one individual, Timothy S. Hummel, owner of The Establishment, Inc.

## Background

The Louisiana Act is patterned after the Model Drug Paraphernalia Act (Model Act) drafted by the Department of Justice [2] as part of the response to the explosive growth of illegal drug traffic across the country. The Model Act seeks to avoid the constitutional infirmities which resulted in success-

ful challenges to various state and local drug paraphernalia laws.[3]

The Louisiana Act defines drug paraphernalia as "all equipment, products and materials of any kind which are used, intended for use, or designed for use ..." with a controlled substance, La.R.S. 40:1031(A)(1),[4] and lists examples.[5] The Act then identi-

**2.** United States Deputy Assistant Attorney General Irvin B. Nathan explained the reasons for the Model Act in his statement to the House of Representatives' Select Committee on Narcotics and Drug Abuse Control (November 1, 1979):

The Department of Justice recognizes the existence of an extensive industry in this country dealing in the manufacture and sale of implements for preparing and using illicit drugs, primarily marijuana and cocaine. The products include "roach clips," water pipes, cocaine spoons and sophisticated kits used to test or process these drugs. We have been advised that total sales of these products amount to at least several hundred million dollars annually.

The advertising, display and open sales of these implements, usually in so-called "head shops" and often in conjunction with the sale of legitimate products promoted among adolescents, are an affront to the communities in which these shops exist because they appear to condone and even glamorize the use of illegal drugs. The attraction of such shops to minors is of particular concern to these communities. As a result, interested community groups have increasingly begun to demand governmental action to deal with the drug paraphernalia industry.

Hearings Before the House Select Comm. on Narcotics and Drug Abuse Control, 96th Cong., 1st Sess. (November 1, 1979) (statement of Dep. Ass't. Atty. Gen'l. Irvin B. Nathan). *See Brache v. County of Westminster*, 507 F.Supp. 566 (S.D.N.Y.1981), *rev'd*, 658 F.2d 47 (2d Cir. 1981).

**3.** The comment to Article I of the Model Act states:

Drug paraphernalia laws are most often attacked because they are too vaguely worded. They seldom explain what is meant by the term paraphernalia. They do not indicate whether it is the use, or the possession, or the sale of paraphernalia that is prohibited. Moreover, they are usually silent on the criminal state of mind that must accompany the prohibited conduct. This deprives an individual of fair warning as to what the law forbids. It also vests too much discretion in authorities to determine what property and what activities are controlled.

In addition to Louisiana, a substantial number of states have adopted drug paraphernalia stat-

utes based on the Model Act. *See, e.g.,* 1980 Conn.Pub.Acts No. 80–224; 16 Del.Laws, §§ 4701 et seq. (1980); Fla.Stat. §§ 893.145–147 (Supp.1980); Ind.Code §§ 35–48–4–8.1 to 8.3 (Supp.1980); Md. [Crim.Law] Code Ann. § 287A (Supp.1980); N.Y.Gen.Bus.Law §§ 850–53 (McKinney Supp.1980). Versions of the Model Act have also been enacted in Colorado, Illinois, Nebraska, New Jersey, Pennsylvania and South Carolina.

*See* Note, The Constitutionality of Drug Paraphernalia Laws, 81 Colum.L.Rev. 582, 585 n.30 (1981).

One successful challenge to a city ordinance not based on the Model Act was recently overturned by the Supreme Court in *Hoffman Estates v. Flipside, Hoffman Estates,* —— U.S. ——, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

**4.** La.R.S. 40:1031. Definitions

A. As used in this Part, unless the context clearly otherwise indicates, the term "drug paraphernalia" shall mean and include, but not be limited to:

(1) All equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, re-packaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the Uniform Controlled Dangerous Substances Law, as scheduled in R.S. 40:964.

**5.** La.R.S. 40:1031(A)(2)–(12) provides:

(2) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived.

(3) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances.

(4) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance.

(5) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness, or purity of controlled substances.

fies twelve factors which must be considered when determining whether a particular object is to be considered drug paraphernalia. La.R.S. 40:1032(1)–(12).[6] Criminal liability is imposed for the sale, distribution, or display of drug paraphernalia, La. R.S. 40:1033(A) & (B), and for its use, 40:1033(C).[7]

■■■ Appellants and amicus curiae raise first, fifth and fourteenth amendment challenges to the Louisiana Act. We consider each assertion raised, first addressing overbreadth and vagueness, mindful that:

(6) Diluents and adulterants, such as quinine, hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting controlled substances.

(7) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining marijuana.

(8) Blenders, bowls, containers, spoons, and mixing devices used, intended for use, or designed for use in compounding controlled substances.

(9) Capsules, balloons, envelopes, and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances.

(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances.

(11) Hypodermic syringes, needles, and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body.

(12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls.

(b) Water pipes.

(c) Carburetion tubes and devices.

(d) Smoking and carburetion masks.

(e) Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand.

(f) Miniature cocaine spoons, and cocaine vials.

(g) Chamber pipes.

(h) Carburetor pipes.

(i) Electric pipes.

(j) Air-driven pipes.

(k) Chillums.

(l) Bongs.

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

(m) Ice pipes or chillers.

6. La.R.S. 40:1032. Determination of drug paraphernalia

In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other legally relevant factors, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use.

(2) The proximity of the object, in time and space, to a direct violation of the Uniform Controlled Dangerous Substances Law.

(3) The proximity of the object to controlled substances.

(4) The existence of any residue of controlled substances on the object.

(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows or should reasonably know intend to use the object to facilitate a violation of the Uniform Controlled Dangerous Substances Law; the innocence of an owner, or of anyone in control of the object, as to a direct violation of the Uniform Controlled Dangerous Substances Law shall not prevent a finding that the object is intended for use or designed for use as drug paraphernalia.

(6) Instructions, oral or written, provided with the object concerning its use.

(7) Descriptive materials accompanying the object which explain or depict its use.

(8) National and local advertising concerning its use.

(9) The manner in which the object is displayed for sale.

(10) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise.

(11) The existence and scope of legitimate use for the object in the community.

(12) Expert testimony concerning its use.

7. The constitutionality of this section is not at issue in the present appeal.

382

*Hoffman Estates v. Flipside, Hoffman Estates*, 102 S.Ct. 1186, 1189 (1982).

## Overbreadth

 A law is facially overbroad if it "does not aim specifically at evils within the allowable area of [government] control, but ... sweeps within its ambit other activities that constitute an exercise" of constitutionally protected rights. *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940). The overbreadth doctrine not only shields protected speech, but has been a vital force counteracting any deterrence to such speech. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).[8]

The only constitutionally protected activity implicated by the Louisiana Act is the first amendment commercial speech right of vendors of items which fall within the definition of drug paraphernalia. The Louisiana statute makes it unlawful for any person, "knowing the drug related nature of the object, to display for sale or possess with the intent to distribute, any drug paraphernalia." La.R.S. 40:1033(B).

 The overbreadth doctrine, however, "does not apply to commercial speech." *Hoffman Estates*, 102 S.Ct. at 1192 (citing *Central Hudson Gas & Electric Co. v. Public Service Comm'n.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)). The Court has refused to apply the overbreadth doctrine in the commercial speech context in part because persons advertising goods or services for a profit are not likely to be lightly deterred.[9]

Further, in the case at bar, as in *Hoffman Estates*:

insofar as any *commercial* speech interest is implicated here, it is only the attenuated interest in displaying and marketing merchandise in the manner that the re-

tailer desires .... The ordinance is expressly directed at commercial activity promoting or encouraging illegal drug use. If that activity is deemed 'speech,' then it is speech proposing an illegal transaction, which a government may regulate or ban entirely.

102 S.Ct. at 1192 (citing *Central Hudson Gas* and *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973)). There is no constitutionally protected conduct implicated by the Louisiana Act; the commercial speech doctrine offers appellants no succor.

## Vagueness

 Under the due process clauses of the fifth and fourteenth amendments, a criminal statute is unconstitutionally vague if it fails to provide meaningful and fair warning of the proscribed conduct and adequate standards to ensure even-handed enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A number of factors are considered in determining the degree of vagueness constitutionally permissible. In *Hoffman Estates*, the Court stated that a successful challenge to the facial validity of an economic regulation requires a showing that the legislation is impermissibly vague in all applications, explaining that "economic regulation is subject to a less strict vagueness test because its subject-matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." 102 S.Ct. at 1193. Further, the Court noted that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." Finally, "the most important factor affecting the clarity that the Constitution demands of a

8. *See* L. Tribe, American Constitutional Law, at 710 (1978).

9. In *Bates v. State Bar of Arizona*, 433 U.S. 350, 381, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977), the Supreme Court stated: "The justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context.... Since advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation." *See* L. Tribe, American Constitutional Law, at 711 n.5 (1978).

law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Id.* Mindful of these guidons, we evaluate appellants' vagueness challenge to the Louisiana Act.

Appellants maintain that the Act is vague because (1) the phrase "used, intended for use, or designed for use" fails to apprise persons of characteristics which would distinguish innocent items from drug paraphernalia; (2) the Act imposes criminal liability on the seller based on the intent of the buyer (transferred intent); (3) the Act fails to provide guidelines sufficient to avoid discriminatory enforcement; and (4) the prohibitory sections, 1033(A) & (B), fail to require that the seller have the specific intent that the questioned item be used with a controlled substance. We address these contentions seriatim.

### "Intended for Use"

Appellants insist that defining drug paraphernalia as items "used" or "intended for use," with a controlled substance fails to differentiate purely innocent items from prohibited items, and thus fails to provide adequate warning of the verboten conduct. The district court found that this language, in the context of the total statutory scheme, clearly requires criminal intent on the part of the person charged with violating the statute, and therefore does provide fair warning of proscribed activities.

Obviously, many items may be used in both a lawful and unlawful manner.[10] To prosecute a person for the sale of an item, both intended and understood to be used lawfully, would run afoul of the due process clause. *See Grayned v. City of Rockford,* 408 U.S. at 108, 92 S.Ct. at 2298. The drafters of both the Model Act and the Louisiana Act addressed this problem by infusing the requirement of specific intent into the definition of drug paraphernalia and by providing examples. The Act condemns only items used, intended for use, or designed for use with a controlled substance.

The "intended for use" language applies to the state of mind of the individual charged with the offense of selling, distributing, or displaying drug paraphernalia. The vendor of an item which may be used innocently, incurs no criminal vulnerability unless he believes or intends that the ambivalent item will be used with a controlled substance.[11] No item bears the stigma of drug paraphernalia under La.R.S. 40:1033(A) & (B), absent the seller's intent that it be used with a controlled substance. Further, no wholesaler or manufacturer can be convicted on the basis of the retailer's intent. Therefore, the concern appellants raise that an individual could be prosecuted based on intent transferred from a third party is misplaced, at least at this stage, when the only question before us is the facial validity of the Act. In light of the protection of the scienter requirement, and considering that this is an economic regulation, we conclude that the Louisiana Act's

---

10. For example, William Berry, President of Warehouse Records & Tapes Distributing Co., Inc., testified for the Association that one of his retail stores sells an alligator clip with a Mr. Bill doll attached to it, and that this could be used either as a lapel pin, or to hold a marijuana cigarette.

11. Four other circuits which have considered the "intended for use" language of the Model Act have reached the same conclusion. *See Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213 (11th Cir. 1982); *Hejira Corp. v. MacFarlane,* 660 F.2d 1356 (10th Cir. 1981); *Casbah, Inc. v. Thone,* 651 F.2d 551 (8th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916 (6th Cir. 1980), *vacated,* 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981), re-entered, 638 F.2d 916 (6th Cir. 1982).

Several district courts have upheld this language. *Atkins v. Clements,* 529 F.Supp. 735 (N.D.Tex.1981); *Stoianoff v. State of Montana,* 529 F.Supp. 1197 (D.Mont.1981); *New England Accessories Trade Ass'n v. Tierney,* 528 F.Supp. 404 (D.Maine 1981); *Nova Records, Inc. v. Sendak,* 504 F.Supp. 938 (S.D.Ind.1980); *New England Accessories Trade Association v. Browne,* 502 F.Supp. 1245 (D.Conn.1980); *Mid-Atlantic Accessories Trade Association v. Maryland,* 500 F.Supp. 834 (D.Md.1980); *Delaware Accessories Trade Ass'n v. Gebelein,* 497 F.Supp. 289 (D.Del.1980); *World Imports, Inc. v. Woodbridge Township,* 493 F.Supp. 428 (D.N.J.1980).

"intended for use" language is not impermissibly vague.

## Discriminatory Enforcement

■ Continuing in their challenge, appellants charge that the Louisiana Act is vague because it fails to provide adequate guidelines to avoid the danger of discriminatory enforcement. We find no merit in this contention. The Louisiana Act contains guidelines facially adequate to prevent discriminatory enforcement and to provide a consistent and uniform determination of items within the definitional bounds of drug paraphernalia.[12] In this regard the Louisiana Act differs significantly from the Model Act. In determining whether an object is drug paraphernalia, the Model Act refers to the factors "a court or other authority should consider in addition to all other logically relevant factors." The Louisiana Act contains twelve factors "a court or other authority shall consider, in addition to all other legally relevant factors." The trial judge was of the opinion that this glossation narrowed the Louisiana Act and made it more precise. We agree.

The dozen factors in the Louisiana Act, a refinement of the Model Act, reflect an effort by the Louisiana Legislature to insure that only items used with controlled substances are criminalized. Appellants argue that this listing and the use of the mandatory "shall" in lieu of the Model Act's permissive "should" raise the spectre that the Louisiana Act will be discriminatorily enforced.

We cannot accept this proposition. We decline to pronounce the Louisiana Act unconstitutionally vague based on the speculation that it may be discriminatorily enforced. Appellants raise a facial, pre-enforcement challenge. In that posture, as the Court observed in Hoffman Estates:

[i]n reviewing a business regulation for facial vagueness . . . the principal inquiry is whether the law affords fair warning of what is proscribed . . . . This emphasis is almost inescapable in reviewing a pre-enforcement challenge to a law. Here, no evidence has been, or could be, introduced to indicate whether the ordinance has been enforced in a discriminatory manner or with the aim of inhibiting unpopular speech.

102 S.Ct. at 1195–96.[13]

## Designed for Use

Appellants and amicus contend that the Louisiana Act's definition of drug paraphernalia as items "designed for use" with a controlled substance is fatally vague. The district court did not separately consider this clause but tested the entire phrase "used, intended for use, or designed for use." Because of the requirement of criminal intent, the entire phrase was found to pass constitutional muster. We agree with the trial judge and go one step further.

In *Hoffman Estates*, the Court of Appeals declared the "designed for use" language unconstitutional. In reversing, the Supreme Court instructed:

A principal meaning of "design" is "To fashion according to a plan." Webster's New International Dictionary of the English Language 707 (2d ed. 1957). Cf. Lanzetta v. New Jersey, 306 U.S. 451, 454, n.3 [59 S.Ct. 618, 619, n.3, 83 L.Ed. 888] (1939). It is therefore plain that the standard encompasses at least an item that is principally used with illegal drugs by virtue of its objective features, i.e., features designed by the manufacturer. A business person of ordinary intelligence

---

12. See note 6.

13. Appellants also contend that the factors listed in § 1032 "do not adhere to evidentiary or constitutional guidelines." Because the Act states that a court or other authority shall consider the enumerated factors, appellants assert that a court must allow the introduction of relevant evidence. So, for example, when § 1032(*1*) provides that statements by an own-er concerning the use of an item must be considered, appellants argue that this renders the Act unconstitutional because such statements may be hearsay and their admission in evidence may violate the sixth amendment confrontation clause. We decline to invalidate a statute based on the speculation that there may be errors in the way in which an individual is prosecuted under its provisions.

would understand that this term refers to the design of the manufacturer, not the intent of the retailer or customer. It is also sufficiently clear that items which are principally used for non-drug purposes, such as ordinary pipes, are not "designed for use" with illegal drugs. 102 S.Ct. at 1194–95.[14] *See Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213 (11th Cir. 1982).

█ We are persuaded that the "designed for use" language of the Louisiana Act similarly applies only to manufacturers, for their own acts of design. This interpretation is supported by the comments to the Model Act,[15] and by a common sense reading of the statutory language.

### Prohibited Acts—Section 1033

As the trial judge observed, the Louisiana Act diverges most significantly from the Model Act in section 1033, which specifies the prohibited acts. The Model Act forbids the manufacture or delivery of drug paraphernalia under circumstances where one "reasonably should know" of intended use with a controlled substance. The Louisiana Act prohibits any person or corporation from selling, distributing or displaying drug paraphernalia, "knowing the drug related nature of the object." The Louisiana Act omits the constitutionally vulnerable "reasonably should know" language.[16]

█ Appellants argue that the Louisiana Act gives inadequate notice and is thus defective because it fails to define "drug related nature of the object." The prohibited acts refer to drug paraphernalia. By definition, drug paraphernalia must be an item "used, intended for use, or designed for use" with a controlled substance. Appellants' suggestions that this qualifying clause refers to the purchaser or manufacturer, but not the seller, and that the definitions of § 1031 cannot be read into § 1033, are not persuasive. The intent requirement applies to the person or corporation charged. This includes the seller. The Louisiana Act is not constitutionally infirm for failure of adequate notice.

### Rationality

█ Appellants dispute that the Act bears a rational relation to any legitimate state interest. Acknowledging the state interest in curbing drug abuse, appellants argue that the ready availability of drug paraphernalia does not contribute to that societal problem. The district court found the Act to be rationally related to a legitimate state purpose. We find that conclusion compelling.

Meeting the rational relationship test imposes only a modest burden on the state. *Williams v. Lee Optical, Inc.*, 348 U.S. 483,

---

**14.** We are cognizant that there are a number of distinctions that can be drawn between the Act before us and the ordinance at issue in *Hoffman Estates.* Most importantly, the ordinance does not provide for criminal penalties. The argument could therefore be made that we should scrutinize the "designed for use" language of the Act more closely than the Court scrutinized the village ordinance. However, in *Hoffman Estates* the Court stated: "the village concedes that the ordinance is 'quasi-criminal,' and its prohibitory and stigmatizing effect may warrant a relatively strict test. Flipside's facial challenge fails because, under the test appropriate to either a quasi-criminal or a criminal law, the ordinance is sufficiently clear as applies to Flipside." 102 S.Ct. at 1194.

We perceive and accord precedential value to *Hoffman Estates'* analysis of the "designed for use" language.

**15.** The comment to Article I of the Model Act in discussing definitions states:

Objects whose sole or at least dominant purpose is to produce, package, store, test or use illicit drugs are considered to be "designed" for such use. A rebuttable presumption exists that these objects are intended for use for the purpose for which they are designed.... As such, they are presumed to be drug paraphernalia. Isomerization devices designed for use in increasing the THC content of marijuana provide a good example.

**16.** The "reasonably should know" language of the Model Act has been held to be unconstitutionally vague in *Record Revolution No. 6 v. City of Parma*, 638 F.2d at 935–36, because it defined the offense of knowingly distributing drug paraphernalia in terms of an individual's ability to perceive rather than his criminal intent.

75 S.Ct. 461, 99 L.Ed. 563 (1955). One need not squint in the dark to perceive a link between the illegal use of drugs, particularly by youngsters, and items used to facilitate drug use. The Louisiana Legislature is within its constitutional authority when it addresses, in this manner, the problems involved in drug abuse. Whether the measure is wise, prudent, or likely to succeed, is a decision for the legislature. The courtroom is not the forum for that debate. We echo the Supreme Court's observation in *Hoffman Estates*: "Many American communities have recently enacted laws regulating or prohibiting the sale of drug paraphernalia. Whether these laws are wise or effective is not, of course, the province of this Court." 102 S.Ct. at 1196 (*citing Ferguson v. Skrupa*, 372 U.S. 726, 728–30, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963)).

The judgment of the district court is AFFIRMED.