KLEES, Judge.
This is an action by a vendor to recover the purchase price of articles it sold to defendants-appellants. From an adverse judgment, defendants-appellants present this appeal raising the following issues:
1. Did the trial court err in rendering judgment against the appellants by finding an agreement between the parties legally binding and not null and void?
2. Did the trial court err in awarding attorney’s fees to the appellee?
3. Did the trial court err in dismissing the reconventional demand of Motwane?
FACTS
The appellee, A Better Place, Inc., is a corporation whose president characterizes it as a “wholesale novelty gift and souvenir company.” The company purports to specialize in items such as pipes, smoking accessories, snuff products, clip-ons, hat pins, stickers, and t-shirts.
The appellants, Motwane’s America, Inc., and Giani Investment Co., are retail outlets which sell gifts and accessories including the types of items distributed by the appel-lee and both outlets are operated by the same individual, Mr. Kishore Motwane. Appellants have done business with appel-lee since 1976.
Between December 29, 1980 and February 27, 1981, appellee sold and delivered merchandise to both appellants. The merchandise sold during these periods included items which the appellee referred to as tobacco pipes, snuff accessories, cigarette papers, smoking accessories and jewelry clips.
On February 5, 1981, shortly after most of the above mentioned sales were made, appellant’s main store was raided by the New Orleans Police Department. The goods seized by the police were considered to be “drug paraphernalia”. Some of the items seized by the police were supplied to Motwane by appellee.
After the raid on his store, Motwane did not honor or pay the invoices from appellee. On February 9th, he did write two checks in the aggregate sum of $12,693.55 toward the *948 balance that he owed. However, he stopped payment on these checks and subsequently made no additional payments on the account.
After the alleged “drug paraphernalia” was impounded by the police and after the appellants refused to pay for the merchandise, Tim Hummel, president of appellee’s business, went to Motwane’s place of business to attempt to collect the debt. The specific events that took place at Motwane’s business are factually in dispute. Motwane claims that Hummel violently attacked him, whereas Hummel denies any such attack.
The appellee filed suit in Civil District Court in Orleans for money alleged to be owed by both appellants for merchandise sold and delivered. Since both appellants were operated by one owner, the suits were consolidated at the trial court level. Mot-wane filed a reconventional demand claiming damages and attorney’s fees resulting from the alleged assault by Hummel.
The trial court found that the appellants owed appellee a total of $21,419.10 for merchandise purchased on an “open account”. In addition, the trial court awarded attorney’s fees to the appellee and dismissed the reconventional demand of Motwane.
The appellants contend that the agreements to purchase the merchandise in question are null and void. In the alternative, they argue that if the agreements are binding, such agreements do not constitute an “open account” and therefore the trial court erred in awarding attorney’s fees. Finally, the defendants contend that the trial court erred when it dismissed the reconventional demand of Motwane.
NULLITY OF CONTRACTS
It is well settled in Louisiana law that a contract made with an illegal cause or object is null and void. The following are the relevant Civil Code articles:
Art. 1891. The object of a contract must be possible, by which is meant physically or morally possible. The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it.
Art. 1892. That is considered as morally impossible, which is forbidden by law, or contrary to morals. All contracts having such an object are void.
Art. 1895. The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order.
The record reveals that the appellants and the appellee made agreements to buy and sell certain merchandise. Some of this merchandise was seized from the appellants’ stores by the New Orleans Police Department as alleged “drug paraphernalia”.
The appellants argue that some of the items sold to them by the appellee were contraband and that the above cited codal articles render the agreements null and void. Thus, the appellants assert that any agreements made with the appellee can have no effect on the parties involved. They contend that this court should not enforce their obligation to pay for the merchandise in question because the sale of the items was contrary to morals and/or public order.
The argument of the appellants has some merit if the items sold can clearly be shown to be “drug paraphernalia”. In order to make this determination, it is necessary to examine the appropriate Revised Statutes which define “drug paraphernalia” and the jurisprudence which interprets the statutes. The applicable statutes are found in the Louisiana Revised Statutes 40:1031 through 40:1036 and are collectively known as the “Drug Paraphernalia Act”. The Louisiana Act is an adaptation of the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the U.S. Department of Justice.
The interpretation of the Louisiana Act is found in Tobacco Accessories, etc. v. Treen, 681 F.2d 378 (5th Cir.1982). The Fifth Circuit Court of Appeals stated at p. 383:
“Obviously many items may be used in both a lawful and unlawful manner. To prosecute a person for the sale of an item, both intended and understood to be used *949 lawfully, would run afoul of the due process clause. See Grayned v. City of Rockford, 408 U.S. [104] at 108, 92 S.Ct. [2294] at 2298 [33 L.Ed.2d 222]. The drafters of both the Model Act and the Louisiana Act addressed this problem by infusing the requirement of specific intent into the definition of drug paraphernalia and by providing examples. The Act condemns only items used, intended for use, or designed for use with a controlled substance.
The ‘intended for use’ language applies to the state of mind of the individual charged with the offense of selling, distributing, or displaying drug paraphernalia. The vendor of an item which may be used innocently, incurs no criminal vulnerability unless he believes or intends that the ambivalent item will be used with a controlled substance. No item bears the stigma of drug paraphernalia under La.R.S. 40:1033(A) & (B), absent the seller’s intent that it be used with a controlled substance. (Emphasis added). Further, no wholesaler or manufacturer can be convicted on the basis of the retailer’s intent.”
The definition of “drug paraphernalia”, considered within the context of the entire Act, clearly requires criminal intent. Consequently, unless there is criminal intent there is no prohibited sale.
In this case, the record reveals no concrete evidence which would establish the requisite criminal intent necessary for the items to be labeled “drug paraphernalia”, nor was there any conviction or determination made in a criminal prosecution under La.R.S. 40:1031 et seq. that the articles are “drug paraphernalia”. Absent such deter-rhination we cannot conclude the trial judge was wrong in finding a binding agreement between the parties.
ATTORNEY’S FEES
In Colonial Products Company v. Park Place Homes, Inc., 282 So.2d 574 (La. App. 4th Cir.1973), this court concluded that án open account existed in “a situation where there [had] been running or current dealings between the parties and the account [had] been kept open with the expectation of further dealings.”
The record and exhibits in this case indicate that the accounts in question contain the requisite elements of open accounts. There had been running and current dealings between appellee and the appellant corporations since the middle of 1979. Ap-pellee continually sold merchandise to the appellant corporations and periodic payments were made by them.
Also, the accounts had been kept open for further dealings. Mr. Motwane testified that every week one of appellee’s salesmen would go around to his stores and write orders. The salesman “fed” the store, he came and supplied everything, and all appellants manager did was mark and price the items.
Furthermore, Ms. Patty Ann Goff, the bookkeeper for appellee, testified that appellant was on an open account. The application for credit by appellant with appellee indicates that the company applied for credit on an open account.
Considering the above facts, we conclude that open accounts existed in the case at bar and that attorney’s fees were properly awarded the appellee under La.R.S. 9:2781.
RECONVENTIONAL DEMAND
Mr. Motwane contends that Tim Hummel, appellee’s president, came to his place of business and violently attacked him. A careful review of the record does not substantiate this contention.
Mr. Motwane testified at trial that Mr. Hummel grabbed him on the shirt. This is the only indication that any attack might have taken place. However, no witnesses were called to substantiate Mr. Motwane’s version of the incident even though there were at least nine neutral observers of the confrontation. Furthermore, on cross examination, Motwane admitted that he did not receive any injury.
Mr. Hummel testified that he did not touch Mr. Motwane on the day in question, except to shake his hand when he left the *950 store. Mr. Rick Fox, an employee of Mr. Hummel, also testified and essentially substantiated his employer’s testimony.
Given the two conflicting accounts of the incident, and considering that the record is totally void of any damages Motwane might have incurred as a result of the incident, we conclude that the trial judge did not abuse his discretion in dismissing the reconven-tional demand of Mr. Motwane.
Accordingly, for the reasons expressed above the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.
SCHOTT, J., dissenting in part.