Vance MURPHY, d/b/a The Store, et al., Plaintiffs-Appellants,

v.

The Honorable Scott MATHESON, Individually and as Governor of the State of Utah, et al., Defendants-Appellees.

No. 82–1701.

United States Court of Appeals, Tenth Circuit.

Submitted on Briefs.

Decided Aug. 22, 1984.

Martin W. Custen, Marquardt, Hasenyager & Custen, Ogden, Utah, for plaintiffs-appellants.

Robert R. Wallace, Salt Lake City, Utah, for Governor Scott Matheson.

David Wilkinson and Jerry J. Kaufman, Salt Lake City, Utah, for defendant-appellee, Ted Cannon.

David L. Gladwell, Ogden, Utah, for defendant-appellee, Robert L. Newey.

Before SETH, Chief Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This case presents a pre-enforcement facial challenge to the constitutionality of Utah's Drug Paraphernalia Act, Utah Code Ann. § 58–37a–1 to –6 (Supp.1983) (Utah Act). Plaintiffs are owners and operators of The Store in Ogden, Utah and The Village Idiot in Salt Lake City, Utah, which are businesses that sell a variety of smoking accessories. Plaintiffs charge that the Utah Act is unconstitutionally overbroad and vague, is not rationally related to a legitimate state interest, and infringes on due process guarantees. The district court upheld the Act's validity. We affirm in part and reverse in part.

I

## The factual background

### A.

In 1981, the Utah Legislature enacted the Utah Drug Paraphernalia Act [1] in order "to discourage the use of narcotics by eliminating paraphernalia designed for processing, ingesting, or otherwise using a controlled substance." Utah Code Ann. § 58–37a–2. The enactment is based on the Model Drug Paraphernalia Act (Model Act),[2] drafted by the Drug Enforcement Administration of the United States Department of Justice. It took effect on July 1, 1981.

The Utah Act defines drug paraphernalia as "any equipment, product, or material used, or intended for use" with a controlled substance. Utah Code Ann. § 58–37a–3. This general definition is followed by a list of twelve non-exhaustive examples of drug paraphernalia; each example reiterates the scienter requirement in the first part of the definition. *Id.* The Act then identifies thirteen non-exhaustive factors that a trier of fact should consider in determining whether a particular object constitutes drug paraphernalia. *Id.* § 58–37a–4. Criminal liability is imposed for the possession, manufacture, delivery, and advertisement of drug paraphernalia.[3] *Id.* § 58–

---

1. The text of the statute is appended to this opinion.

2. The Utah Act closely parallels the Model Act with two principal exceptions: the deletion of the "designed for use" portion of the Model Act's paraphernalia definition, and the deletion of the "reason to know" standard from the mens rea requirement in the delivery and advertising offenses. *See generally Utah Legislative Survey—1981,* 1982 Utah L.Rev. 125, 149–54.

3. Persons who violate the statute are subject to the following maximum penalties: six months' imprisonment and/or $299 fine (for violations

37a–5. Finally, drug paraphernalia is subject to seizure and forfeiture. *Id.* § 58–37a–6.

### B.

Plaintiffs brought suit under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, seeking preliminary and permanent injunctive relief to enjoin defendants from enforcing the Act and seeking also a declaratory judgment that the Act is unconstitutional under the United States Constitution. An evidentiary hearing was held on plaintiffs' motion for a preliminary injunction, which was thereafter denied. A trial on the merits followed, with the evidence received at the preliminary injunction hearing being preserved and made part of the record.

The trial court later entered judgment in favor of defendants, ruling that the Utah Act "is neither unconstitutionally vague nor overbroad in violation of the United States Constitution nor does it violate the First Amendment rights of plaintiffs or other persons." I R. 132. The court found that the inclusion of "a high specific intent requirement" provides notice to the public of what conduct is prohibited; that the Act is not vague since it gives a person of ordinary intelligence a reasonable opportunity to know what kind of conduct is prohibited, so that he may act accordingly; that the various standards contained in the Act are sufficiently detailed and explicit so that they would not trap the innocent by failing to give fair warning; and that the Act provides sufficiently explicit standards so that those who enforce the Act are not likely to do so in an arbitrary and discriminatory manner. *Id.* at 131–32.

On appeal, plaintiffs' principal arguments for reversal are: (1) the Act is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment; (2) the Act is unconstitutionally overbroad by restricting the free flow of commercial and noncommercial speech, in violation of the First and Fourteenth Amendments; and (3) the Act's forfeiture clause violates the Due Process Clause because it does not provide for a hearing. We address the overbreadth and vagueness assertions first, mindful that:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnotes omitted).

### II

#### Overbreadth

Under the overbreadth doctrine, "[g]iven a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially infringes the First Amendment rights of other parties not before the court." *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980). This exception to the "traditional rules governing constitutional adjudication" is justified because of a "judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma,* 413 U.S. 601, 610–12, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973).

of § 5(1), possession of drug paraphernalia, and of § 5(4), advertisement of drug paraphernalia); one year imprisonment and/or $1000 fine (for violations of § 5(2), manufacture or delivery of drug paraphernalia); and five years' imprisonment and/or $5000 fine (for violations of § 5(3), delivery of drug paraphernalia to a minor). *See* Utah Code Ann. §§ 76–3–203, –204, –301 (1978 & Supp.1983).

Plaintiffs argue that the Utah Act is unconstitutionally overbroad by restricting the free flow of commercial speech. They say that the ban on printed advertising in § 5 of the Act could (1) be used against advertisers or publishers who place ads in printed media for circulation outside the State; (2) prohibit Utah residents from receiving information about items deemed "drug paraphernalia" here which are available in other jurisdictions which do not prohibit their use; and (3) have a chilling effect on the advertising of legitimate objects. Brief of Appellants 29. They also contend that relevant factors (8), "National and local advertising concerning its use," and (9), "The manner in which the object is displayed for sale," in § 4, improperly interfere with their own advertising, pointing out that they advertise their wares by display in their stores or by radio. *Id.* at vii, 27–28.

Plaintiffs' contention that the statute's printed advertising ban has an overbroad scope encompassing protected commercial speech rights of others has been foreclosed by the Supreme Court's decision in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).[4] There the Court ruled that a merchandiser of drug paraphernalia did not have standing to assert the commercial speech rights of third parties because "the overbreadth doctrine does not apply to commercial speech." *Id.* at 497, 102 S.Ct. at 1192, *citing Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 565 n. 8, 100 S.Ct. 2343, 2351 n. 8, 65 L.Ed.2d 341 (1980). In *Central Hudson* the Court explained that "[t]he overbreadth doctrine derives from the recognition that unconstitutional restriction of expression may deter protected speech by parties not before the court and thereby escape judicial review.... This restraint is less likely where the expression is linked to 'commer-

cial well-being' and therefore is not easily deterred by 'overbroad regulation.'" 447 U.S. at 565 n. 8, 100 S.Ct. at 2351 n. 8 (quoting *Bates v. State Bar of Arizona,* 433 U.S. 350, 381, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977)).

■ In light of *Flipside* and other cases, we must hold that plaintiffs do not have standing to make a facial challenge to the statute claimed to infringe the commercial speech rights of others not before the court. *Accord, Camille Corp. v. Phares,* 705 F.2d 223, 227 (7th Cir.1983); *Stoianoff v. Montana,* 695 F.2d 1214, 1224 (9th Cir. 1983); *New England Accessories Trade Association, Inc. v. City of Nashua,* 679 F.2d 1, 4 (1st Cir.1982).

■ Insofar as plaintiffs argue that relevant factors (8) and (9) interfere with their own advertising, which concededly is only by display or by radio, they would of course have standing to assert that their personal commercial free speech rights have been infringed. Those rights, however, are not constitutionally protected in this instance because the statute is directed at commercial activity promoting or encouraging illegal drug use. Therefore, "[i]f that activity is deemed 'speech', then it is speech proposing an illegal transaction, which a government may regulate or ban entirely. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 563–564 [100 S.Ct. 2343, 2350, 65 L.Ed.2d 341] (1980); *Pittsburgh Press Co. v. Human Relations Comm'n,* 413 U.S. 376, 388 [93 S.Ct. 2553, 2560, 37 L.Ed.2d 669] (1973)." *Flipside,* 455 U.S. at 496, 102 S.Ct. at 1192; *see also Camille Corp. v. Phares,* 705 F.2d at 227 n. 2; *New England Accessories Trade Association, Inc. v. City of Nashua,* 679 F.2d at 3–4; *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1217 (11th Cir.1982); *Casbah, Inc. v. Thone,* 651 F.2d 551, 564 (8th Cir.1981), *cert. denied,*

---

**4.** Commercial speech has been variously defined as speech which does "no more than propose a commercial transaction," *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37

L.Ed.2d 669 (1973), or that "relate[s] solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 561, 100 S.Ct. at 2348.

455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982).

Plaintiffs also argue that the statute is unconstitutionally overbroad by restricting the free flow of noncommercial speech. They say that relevant factor (7), "Descriptive materials accompanying the object which explain or depict its use," will permit police to seize and arrest for items displaying drug-related replicas on paraphernalia because "intent" will be inferred from the presence of the replication. They assert that such replicas may constitute protected symbolic speech and they give as an example the marijuana leaf, which is used as a symbol of a movement advocating the liberalization of marijuana laws. Brief of Appellants 31.

They also say that under relevant factor (1), "Statements by an owner or by anyone in control of the object concerning its use," "statements" may be made while engaging in constitutionally protected conduct such as advocating decriminalization of marijuana laws. Brief of Appellants 34–35.

The Court considered a symbolic speech argument in *Flipside* and rejected it:

Flipside ... argues that because the presence of drug-related designs, logos, or slogans on paraphernalia may trigger enforcement, the ordinance infringes "protected symbolic speech." ...

These arguments do not long detain us.... Although drug-related designs or names on cigarette papers may subject those items to regulation, the village does not restrict speech as such, but simply regulates the commercial marketing of items that the labels reveal may be used for an illicit purpose. The scope of the ordinance therefore does not embrace noncommercial speech.

*Flipside*, 455 U.S. at 496, 102 S.Ct. at 1192.

The same reasoning applies here. *See Garner v. White*, 726 F.2d 1274, 1279–80 (8th Cir.1984); *Pennsylvania Accessories Trade Association, Inc. v. Thornburgh*, 565 F.Supp. 1568, 1572–73 (M.D.Pa. 1983). Moreover, even if the statute implicated noncommercial speech, any effect on the expression of ideas would be minimal and thus would fall well short of the "substantial" requirement of the overbreadth doctrine. *See Schaumburg*, 444 U.S. at 634, 100 S.Ct. at 834; *see also Weiler v. Carpenter*, 695 F.2d 1348, 1350 (10th Cir. 1982); *General Stores, Inc. v. Bingaman*, 695 F.2d 502, 504–05 (10th Cir.1982); *Garner v. White*, 726 F.2d at 1279–80; *Pennsylvania Accessories*, 565 F.Supp. at 1572. That some unconstitutional applications of the law can be imagined is insufficient to invalidate the statute on overbreadth grounds. *Broadrick v. Oklahoma*, 413 U.S. at 618, 93 S.Ct. at 2919; *Pennsylvania Accessories*, 565 F.Supp. at 1572.

## III

### Vagueness

In *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972), the Supreme Court enunciated the following standards for evaluating vagueness challenges:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. [Footnotes omitted.]

*See also Roberts v. United States Jaycees*, —— U.S. ——, ——, 104 S.Ct. 3244, 3254, 82 L.Ed.2d 462 (1984); *Kolender v. Lawson*, 461 U.S. 352, 355–57, 103 S.Ct. 1855, 1857–58, 75 L.Ed.2d 903 (1983). The Court made clear in *Flipside*, 455 U.S. at 498–99,

102 S.Ct. at 1193, that these standards are not subject to mechanical application:

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.
>
> Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply. [Footnotes omitted.]

The statute here, like the ordinance in *Flipside*, regulates economic activity and contains a scienter requirement. Further, as determined in Part II, *supra*, the statute does not inhibit constitutionally protected rights. However, because violations carry criminal penalties, we apply a strict test of specificity. *See Garner v. White*, 726 F.2d at 1278.

Appellants maintain that the Utah Act is vague because (1) the phrase "used, or intended for use" in § 3 does not apprise persons of ordinary intelligence which items fall within the statute's proscriptions; (2) the examples given in § 3 and the listing of logically relevant factors in § 4 do not lend precision to the statute's definition of drug paraphernalia; (3) the definitional vagueness is not cured by the inclusion of a scienter requirement; and (4) the statute fails to provide adequate and explicit enforcement guidelines. We address these contentions in turn.

### A. *Fair notice*

#### 1. *"Intended for use"*

■ Section 3 defines "drug paraphernalia" as items "used, or *intended for use*" with controlled substance. Utah Code Ann. § 58–37a–3 (emphasis added). Plaintiffs argue that the phrase "intended for use" is impermissibly vague because it fails to indicate whose intent is relevant; it might, for example, refer to the intent of the retail purchaser, the manufacturer, or the seller. Plaintiffs say that "[i]f [that language] refers to the state of mind of anyone other than the seller, then the seller has to guess the intent of another person, often unknown to the seller, at the risk of economic loss and criminal prosecution if he guesses incorrectly."[5] Brief of Appellants 5–6.

Although we are troubled somewhat by the ambiguity of the definitional term, when taken alone, we believe that a fair reading of the statute as a *whole* indicates that the intent referred to is that of persons alleged to have violated the statute. *See General Stores, Inc. v. Bingaman*, 695 F.2d at 503–04; *Stoianoff v. Montana*, 695 F.2d at 1220; *New England Accessories Trade Association, Inc. v. Tierney*, 691 F.2d 35, 35–36 (1st Cir.1982); *Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen*, 681 F.2d 378, 383–84 (5th Cir.1982); *Casbah, Inc. v. Thone*, 651 F.2d at 559; *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 928–29 (6th Cir.1980), *vacated*

---

**5.** This problem is often characterized as one of "transferred intent," insofar as the intent of a second party could allegedly be attributed to an innocent party as a basis for prosecution. *See, e.g., Casbah, Inc., v. Thone*, 651 F.2d at 559.

*and remanded,* 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981), *vacated and remanded,* 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982), *aff'd,* 709 F.2d 534 (1983); *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. 289, 292–93 (D.Del.1980); *see also Hejira Corp. v. MacFarlane,* 660 F.2d 1356, 1367 (10th Cir. 1981).

*Casbah* is instructive:

What seems at first glance to be a deficiency in draftsmanship is explained by the fact that the definitional section is intended to draw four categories of persons (manufacturers, wholesalers, retailers and purchasers) within the reach of the legislation. [The sections defining the substantive offenses] provide clarity by linking the requirement of intent with the person whose activity is forbidden

. . . .

651 F.2d at 559.

Two other considerations point to this conclusion. First, courts are traditionally reluctant to read criminal statutes as imposing liability in the absence of a guilty state of mind on the part of the defendant. *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. at 292. For example, in construing an analogous statutory scheme, the National Prohibition Act, ch. 85, tit. 2, § 18, 41 Stat. 305, 313 (1919) (repealed 1935), courts have held that the term "intended for use" refers to the vendor charged, not to a hypothetical third party. *See, e.g., United States v. Brunett,* 53 F.2d 219, 230 (W.D.Mo.1931). A similar interpretation has been given to I.R.C. § 5686(b) (1954), which also contains "intended for use" language. *See Chapman v. United States,* 271 F.2d 593, 596 n. 3 (5th Cir.1959), *cert. denied,* 362 U.S. 928, 80 S.Ct. 755, 4 L.Ed.2d 746 (1960).

Second, comments to the Model Act make clear that the potential defendant is the person in control of the item. The comments state, for example:

To insure that innocently possessed objects are not classified as drug paraphernalia, Article I makes the knowledge or criminal intent of the person in control of an object a key element of the definition. Needless to say, inanimate objects are neither "good" nor "bad", neither "lawful" nor "unlawful". Inanimate objects do not commit crimes. But, when an object is controlled by people who use it illegally, or who intend to use it illegally, or who design or adapt it for illegal use, the object can be subject to control, and the people subjected to prosecution. . . .

Hinging the definition of drug paraphernalia on a specific intent to violate, or to facilitate a violation of, the drug laws also provides "fair warning" to persons in possession of property potentially subject to this Act. A statute is not unconstitutionally vague if it embodies a specific intent to violate the law.

Comments to Model Act, quoted in *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. at 293 (Delaware court's brackets deleted).

We are satisfied that the Utah Act adequately defines the mental state required to make an item "drug paraphernalia" and that it refers to the intent of the person charged with a violation.

2. *Exemplary drug paraphernalia*

▪ Plaintiffs argue that the various examples given in § 3 of the Act fail to give sufficient definiteness to avoid vagueness problems. They say that the listing is non-exhaustive and does not limit the statute meaningfully, and that each example, being modified by the phrase "intended for use," is fraught with the same vagueness problems addressed above, because nowhere is the phrase "intended for use" defined, limited, or explained.[6]

**6.** Plaintiffs also contend that § 3(12)(a)–(m) is unconstitutional because it makes the object listed drug paraphernalia per se, in total violation of the Due Process Clause. Plaintiffs, however, misread the statute. The listed items are exemplary only and are not presumed to be drug paraphernalia. *See Kansas Retail Trade Cooperative v. Stephan,* 695 F.2d 1343, 1347 (10th Cir. 1982); *New England Accessories Trade Association, Inc. v. Tierney,* 691 F.2d at 37; *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d at 932.

We find no vagueness problem in the list of items exemplary of drug paraphernalia. Plainly, there are many forms of drug paraphernalia, and a list such as this could not possibly contain all variations. The list of examples provided lends greater definiteness to the statute and enhances, rather than diminishes, the notice of proscribed conduct. *See Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen,* 681 F.2d at 383 (drug paraphernalia statute addresses due process problem in part by providing examples). The language of intent, which is repeated after each of the examples listed, ensures that no item is drug paraphernalia, absent the requisite intent to use it with controlled substances. *See Casbah, Inc. v. Thone,* 651 F.2d at 560.

### 3. *Logically relevant factors*

Plaintiffs argue that the listing of logically relevant factors in § 4 does not aid in clarifying the definition of drug paraphernalia. They say that these criteria are explicitly restricted to the "trier of fact" and thus are intended, if at all, to aid in after-the-fact determinations of when drug paraphernalia are being sold, used, possessed, or manufactured, rather than whether something is drug paraphernalia. They also say that these factors will, if anything, serve to confuse persons trying to comply by requiring them to take into account the thoughts and actions of others, and permit conviction on the impermissible theory of guilt by association. Brief of Appellants 6–7, 34.

We find no problem of notice vagueness in the statutory reference to the trier of fact. In *Hejira Corp. v. MacFarlane,* 660 F.2d 1356 (10th Cir.1981), we interpreted a similar provision in the Colorado Drug Paraphernalia Act[7] and concluded that the factors listed were intended to be part of the definition of the crime. As such, they were not for the court's use alone, and were not intended to be withheld from the enforcement officers or anyone else administering or complying with the statute. Thus, "[t]he ultimate test as to the sufficiency of any cause of action is whether it will stand up in court. Therefore, law enforcement authorities are effectively compelled to work directly with the enunciated criteria if they are to carry out the Act."

*Hejira,* 660 F.2d at 1368.

We also believe that the enumerated factors themselves will not create excessive confusion or otherwise permit a conviction based on guilt by association. As the Eighth Circuit has stated with respect to a similar statute:

> The enumerated factors themselves pose no constitutional problem, and are valuable guides in determining what items are prohibited.... Admittedly, the actions of third parties are relevant in determining what is drug paraphernalia. However, appellants overstate the problems of transferred intent and guilt by association by contending that third party actions are sufficient for conviction. In fact, evidence regarding third party actions is but one step in the prosecutorial scheme. If third party actions as referred to in [the relevant factor section], tend to indicate that an item is drug paraphernalia, the focus of inquiry must necessarily shift to the intent of the individual involved.

*Casbah, Inc. v. Thone,* 651 F.2d at 560 (footnote omitted). *But see Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d at 933–34 (list of relevant factors might permit conviction on impermissible theory of guilt by association, but for due process principle incorporated in Ohio law that guilt be based on personal action, statements, or knowledge, not on association with other persons suspected of criminal conduct).

---

7. The Colorado Act provides that "[i]n determining whether an object is drug paraphernalia, a court, in its discretion, may consider, in addition to all other relevant factors, the following [eleven factors] ...." Colo.Rev.Stat. § 12–22–503 (Supp.1983).

#### 4. *The scienter requirement*

■ The district court found that "[t]he U.D.P.A. provides notice to the public of what conduct is proscribed through the inclusion in the Act of a high specific intent requirement." I R. 131. Plaintiffs assert that the proposition that specific intent can cure vagueness is inapposite when the vagueness results, as in the instant case, from a failure to *define* conduct so that a person of ordinary intelligence can know in advance that his conduct is proscribed. They say that "laws that have vague definitions cannot be saved by the requirement of specific intent, since you cannot specifically intend to violate a law you cannot understand. The danger inherent in finding the U.D.P.A. constitutional is that a bootstrapping effect will take place, and a person's 'intent' will be presumed by law enforcement officers and others, from the mere fact of simple possession." Brief of Appellants 20.

The Supreme Court has recognized that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Flipside*, 455 U.S. at 499, 102 S.Ct. at 1193 (footnote omitted); *see, e.g., Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 342, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952); *Screws v. United States*, 325 U.S. 91, 101–03, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945) (plurality opinion); *see also M.S. News Co. v. Casado*, 721 F.2d 1281, 1290 (10th Cir. 1983); *United States v. Salazar*, 720 F.2d 1482, 1485–86 (10th Cir.1983). However,

> it is evident that … the "scienter" meant must be some other kind of scienter than that traditionally known to the common law—the knowing performance of an act with intent to bring about that thing, whatever it is, which the statute proscribes, knowledge of the fact that it is so proscribed being immaterial.… Such scienter would clarify nothing; a clarificatory "scienter" must envisage not only a knowing what is done but a knowing that what is done is unlawful or, at least, so "wrong" that it is probably unlawful.

Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67, 87 n. 98 (1960) (cited in *Flipside*, 455 U.S. at 499 n. 14, 102 S.Ct. at 1193 n. 14).

As pointed out in *Levas & Levas v. Village of Antioch, Illinois*, 684 F.2d 446, 453 (7th Cir.1982), the scienter requirement in statutes patterned after the Model Act is of the clarifying kind:

> Here the scienter requirement is not simply a circular reiteration of the offense— an intent to sell, offer for sale, display, furnish, supply or give away something that may be classifiable as drug paraphernalia. Rather the scienter requirement determines what *is* classifiable as drug paraphernalia: the violator must design the item for drug use, intend it for drug use, or actually employ it for drug use. Since very few of the items a paraphernalia ordinance seeks to reach are single-purpose items, scienter is the only practical way of defining when a multi-purpose object becomes paraphernalia. So long as a violation of the ordinance cannot be made out on the basis of someone other than the violator's knowledge, or on the basis of knowledge the violator ought to have had but did not, this sort of intent will suffice to distinguish "the paper clip which holds the pages of this memorandum of opinion from an identical clip which is used to hold a marijuana cigarette." [Emphasis in original]

*Compare Record Head Corp. v. Sachen*, 682 F.2d at 677–78 (drug paraphernalia ordinance that enumerated various factors to be considered in place of scienter requirement held unconstitutionally vague) with *Levas*, 684 F.2d at 453 (distinguishing *Sachen* on ground that intent requirement in *Sachen* ordinance could only be interpreted in circular, nonclarifying sense).

The scienter requirement in the Utah Act closely parallels that of the Model Act. In discussing a very similar statute in *Kansas Retail Trade Cooperative v. Stephan*, 695 F.2d at 1345, we stated:

H.B. 2020 makes it necessary, in order to have a conviction, that a person possess, sell or manufacture an item with the intent that the item be drug paraphernalia. Since the person must actually intend that an item be drug paraphernalia he has notice of his criminal act and due process is satisfied.

*See also Weiler v. Carpenter,* 695 F.2d at 1349 ("[drug paraphernalia] law is constitutional because it requires proof of subjective intent to engage in proscribed conduct").

We thus fully agree with the finding of the district court that the Utah Act provides adequate notice to the public of what conduct is forbidden.

B. *Adequacy of enforcement standards*

We turn now to the second element of the vagueness test: the question of enforcement standards. Plaintiffs assert that the logically relevant factors in § 4 of the statute are insufficiently objective to distinguish between innocent and drug-related merchandise. They say that as a result "the police officer will rely on his own limited experiences, aesthetics, and political views when making arrests and seizing inventories." Brief of Appellants 23.

Plaintiffs question several of the thirteen factors of § 4. Item (2), "Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to a controlled substance," is challenged as allowing a jury, despite the rules of evidence, to infer that objects offered for sale are "drug paraphernalia" because the store owner or clerk was convicted many years earlier of passing a forged prescription. It is further argued that the term "legitimate supplier" in item (10), "Whether the owner or anyone in control of the object is a legitimate supplier of like or related items to the community, ...," is standardless, conclusory, and vague. Finally, item (11), "Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise," is said to beg the question of the object's legality since a business person

will sell that which maximizes profits. Brief of Appellants 21–22.

▮▮▮▮ Although not all the factors are equally relevant and specific, when taken as a whole they serve to channel enforcement activities by providing objective measures for the evaluation of specific factual situations. *Levas & Levas v. Village of Antioch, Illinois,* 684 F.2d at 454; *see also Kansas Retail Trade Cooperative v. Stephan,* 695 F.2d at 1346–47; *Hejira Corp. v. MacFarlane,* 660 F.2d at 1367–69; *Casbah, Inc. v. Thone,* 651 F.2d at 560–61. As such, they are "likely to be susceptible to appropriate re-evaluation: the prosecutor can assess the arresting officer's case, the trial court can put the prosecutor to his proof, and the reviewing court can examine the trial court's findings." *Levas,* 684 F.2d at 454. "[T]he fact that different minds may reach different results when seeking to determine whether a given object falls within the statutory definition of drug paraphernalia does not render the statute void for vagueness." *Hejira,* 660 F.2d at 1367.

When a business regulation is reviewed for facial vagueness, the principal inquiry is whether the law affords fair warning of what is proscribed. *Flipside,* 455 U.S. at 503, 102 S.Ct. at 1196. This emphasis is almost inescapable in reviewing a pre-enforcement challenge to a law because no evidence could be introduced to indicate whether the law has been enforced in a discriminatory manner. *Id.* Plaintiffs have presented no such evidence here. Although the record reveals some confusion among law enforcement officials over what items the statute covers, we are not prepared, at this .pre-enforcement stage, to hold that the risk of arbitrary enforcement jeopardizes the entire statute. Plaintiffs may raise their claim in a post-enforcement proceeding when the possibility of selective enforcement has "ripen[ed] into a prosecution." *Id.* at 503–04 nn. 21 & 22, 102 S.Ct. at 1196 nn. 21 & 22.

IV

*Substantive Due Process*

Plaintiffs contend that the Utah Act offends substantive due process. Specifically,

they argue that the "U.D.P.A., by prohibiting the possession of otherwise innocent objects (pipes, small spoons, containers, roach clips, etc.) which arguably do not implicate First Amendment free speech issues, prohibits, nonetheless, lawful activity without any reasonable relationship between the state's interest in preventing the spread of illegal drug use and its criminalizing of possession of innocuous items." Brief of Appellants 32–33. Plaintiffs further argue that if the statute infringes on fundamental First Amendment rights, the State must show a compelling state interest, and the statute must be narrowly drawn and constitute the least restrictive alternative. They assert that the record here is "devoid of any evidence that the compelling state interest will be fulfilled by banning the sale, possession, etc. of drug paraphernalia." *Id.* at 33.

■ When local economic or social regulation is challenged as violating substantive due process, courts consistently defer to legislative determinations as to the desirability of particular statutory schemes. *See, e.g., Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213–14, 57 L.Ed.2d 91 (1978). *See generally* J. Nowak, R. Rotunda & J. Young, *Handbook on Constitutional Law* 409–10 (1978). Unless a state law trammels fundamental personal rights, we are to presume that state legislatures have acted within their constitutional power and are to require only that the law "bears a reasonable relation to the State's legitimate purpose ...." *Exxon Corp. v. Governor of Maryland,* 437 U.S. at 125, 98 S.Ct. at

2213; *see Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952); *cf. City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam). In short, it is by now clear that the Due Process Clause does not empower the judiciary "to sit as a 'superlegislature to weigh the wisdom of legislation' ...." *Ferguson v. Skrupa,* 372 U.S. 726, 731, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963) (quoting *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. at 423, 72 S.Ct. at 407).

■ We hold that the Utah Act meets the rational basis test. As stated in § 2, the purpose of the statute is "to discourage the use of narcotics by eliminating paraphernalia designed for processing, ingesting, or otherwise using a controlled substance." Utah Code Ann. § 58–37a–2. There is no question that the State of Utah has a legitimate interest in stemming the tide of drug abuse, which adversely affects the public health, safety, morals, and general welfare. *See Robinson v. California,* 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962); *Minnesota ex rel. Whipple v. Martinson,* 256 U.S. 41, 45, 41 S.Ct. 425, 426, 65 L.Ed. 819 (1921). Moreover, in deciding what means to employ, the Utah Legislature could make the reasoned judgment that the unrestricted sale and glorification of drug paraphernalia tends to enhance the consumption of illegal drugs,[8] and that to control the use of illegal

---

**8.** The State presented evidence at the preliminary injunction hearing that a correlation exists between the use of illegal drugs and the ready availability of drug paraphernalia. For example, Dr. Harry L. Gibbons, Director of the Salt Lake City—County Health Department, testified:

Q. Do you have an opinion as to the relationship of paraphernalia to the ultimate use of drugs?
A. Yes, I do.
Q. What is that opinion?
A. I think that the paraphernalia promotes drug use, the availability and just the knowledge of it.
Q. Do you find anything inconsistent with the fact that drugs are outlawed and those

specifically scheduled as a controlled substance and the sale of paraphernalia that could possibly be used for ultimate implementation of drug use?
A. Definitely.
II R. 150.
Mr. Michael George, an investigator for the Salt Lake County Attorney's Office, also testified that:
Q. Have you ever arrested anyone in your career for marijuana where any such items have been on their person?
A. Yes.

drugs effectively it would have to regulate items used to facilitate such drug use. Whether this measure is wise or likely to succeed is not for the courts to decide. *See Flipside,* 455 U.S. at 505, 102 S.Ct. at 1197; *Ferguson v. Skrupa,* 372 U.S. at 728–30, 83 S.Ct. at 1030–31. "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. at 488, 75 S.Ct. at 464.[9]

Plaintiffs argue, however, that the statute is an irrational method of achieving the State's purpose because it would prohibit innocent or lawful uses of items covered by the statute. *Flipside* rejected this argument:

> If Flipside is objecting that the ordinance would inhibit innocent uses of items found to be covered by the ordinance, it is complaining of denial of substantive due process. [This] claim obviously lacks merit. A retailer's right to sell smoking accessories, and a purchaser's right to buy and use them, are entitled only to minimal due process protection. Here, the village presented evidence of illegal drug use in the community.... Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use. See

*Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124–125, 98 S.Ct. 2207, 2213–2214, 57 L.Ed.2d 91 (1978).

*Flipside,* 455 U.S. at 497 n. 9, 102 S.Ct. at 1192 n. 9.

Plaintiffs also say that the State must show a compelling state interest if the statute infringes on fundamental First Amendment rights. We earlier rejected the argument that the Utah Act implicates vital or fundamental rights. *See* Part II, *supra; see also Record Head Corp. v. Sachen,* 682 F.2d at 674–75 ("[n]o fundamental rights or suspect classifications are implicated by the terms of drug paraphernalia legislation"). Accordingly, all that due process requires in these circumstances is that the law bear a reasonable relationship to a legitimate state interest. Having already found the requisite rational relationship, we must defer to the State legislature's choice of statutory schemes. *See Exxon Corp. v. Governor of Maryland,* 437 U.S. at 124–25, 98 S.Ct. at 2213–14.

## V

### Procedural Due Process

Finally, plaintiffs contend that the forfeiture provision of the Utah Act violates the Due Process Clause of the Fourteenth Amendment because it does not provide for a hearing. Relying on *Calero-Toledo v.*

---

Q. And do you draw any correlation between the smoking of marijuana and drug paraphernalia?
A. Yes, sir.
Q. Is that based upon your experience as a police officer and the arrests that you have made?
A. Yes, sir.
Q. And I would like to show you Exhibit 26. Have you ever seen an item such as that before?
A. Yes, sir.
Q. And what is that called in street talk?
A. Paraphernalia kit used for the ingestion of cocaine.
Q. Do they call it a coke kit?
A. Coke kit, yes, sir.
Q. This little tiny spoon at the top, what is that normally called?
A. A coke spoon.
Q. Have you ever seen a kit like this used for any reason other than unlawful?

A. No, sir.
*Id.* at 160.

9. Other courts consistently have held that a rational basis exists for drug paraphernalia legislation when it has been challenged on either substantive due process or equal protection grounds. *See Flipside,* 455 U.S. at 497 n. 9, 102 S.Ct. at 1192 n. 9; *Camille Corp. v. Phares,* 705 F.2d at 228; *Levas & Levas v. Village of Antioch, Illinois,* 684 F.2d at 451; *Record Head Corp. v. Sachen,* 682 F.2d at 678–79; *Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen,* 681 F.2d at 385; *Atkins v. Clements,* 529 F.Supp. 735, 744–45 (N.D.Tex. 1981); *Franza v. Carey,* 518 F.Supp. 324, 330–31 (S.D.N.Y.1981); *Mid-Atlantic Accessories Trade Association v. Maryland,* 500 F.Supp. 834, 847–48 (D.Md.1980); *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. at 295; *World Imports, Inc. v. Woodbridge Township,* 493 F.Supp. 428, 433 (D.N.J.1980).

*Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), they argue that although a pre-seizure hearing may not be required in these circumstances, due process requires at the very least a hearing after seizure and that § 6 of the Act makes absolutely no provision for a forfeiture hearing and is therefore violative of due process.[10] Brief of Appellants 35.

The requirements of procedural due process apply whenever the State deprives a person of "life," "liberty," or "property" within the meaning of the Fourteenth Amendment. There is no dispute that sellers of alleged drug paraphernalia have a vital property interest in their inventories. *See Franza v. Carey*, 518 F.Supp. at 343–44. The question is what process is due before permanent forfeiture of the seller's property and whether the statute meets the requirements of that process.

In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court upheld the seizure of a yacht pursuant to a statute providing for seizure and forfeiture of vessels used for unlawful purposes, without prior notice or a prior adversary hearing, after authorities discovered a controlled substance on board. The Court held that the case presented an "extraordinary" situation in which postponement of notice and hearing until after seizure did not deny due process. *Id.* at 679–80, 94 S.Ct. at 2089–90. The Court identified three considerations making this an extraordinary situation. First, seizure under the statute served significant governmental purposes by permitting officials to assert *in rem* jurisdiction over the property in forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions. Second, pre-seizure notice and hearing might frustrate the interests served by the statute, the property seized often being of the sort that could be removed from the jurisdiction, destroyed, or

concealed, if advance notice were given. And third, unlike the situation in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), seizure was not initiated by self-interested private parties but only by government officials. 416 U.S. at 679, 94 S.Ct. at 2089.

Relying on *Calero*, courts have implicitly found the same exigencies to arise during the seizure of illegal drug paraphernalia as during the seizure of controlled substances. Accordingly, forfeiture provisions in drug paraphernalia statutes that have not permitted pre-seizure notice and hearing have been approved. *See Casbah, Inc. v. Thone*, 651 F.2d at 562; *Windfaire, Inc. v. Busbee*, 523 F.Supp. 868, 872 (N.D.Ga.1981); *see also Weiler v. Carpenter*, 695 F.2d at 1350 (providing hearing within thirty days after seizure satisfies due process requirement); *Franza*, 518 F.Supp. at 344 (seriously doubtful whether due process requires pre-seizure notice and hearing); *cf. In re One Cessna Aircraft*, 90 N.M. 40, 559 P.2d 417, 419 (1977) (provision for hearing within thirty days of seizure in controlled substances statute sufficient to satisfy due process standards). However, when statutes or ordinances have failed to provide for either pre- or post-seizure notice and an adversarial hearing, the requirements of due process have been held not to be met. *See Weiler*, 695 F.2d at 1350; *Franza*, 518 F.Supp. at 344.

■ Section 6 of the Utah Act provides: "Drug paraphernalia is subject to seizure and forfeiture and no property right can exist in it." Utah Code Ann. § 58–37a–6. It is clear that neither this nor any part of the Act makes provision for a forfeiture hearing. Defendants argue, however, that § 6 cannot be read in a vacuum but is to be read in conjunction with a provision in the controlled substances statute, Utah Code Ann. § 58–37–13, which, it says, mandates the procedure for determination of forfeiture and calls for the filing of a complaint, notice, and hearing. Brief of Appellees 29.

---

10. As permitted by Fed.R.Civ.P. 15(a), plaintiffs added this due process claim to its complaint by written consent of the adverse party. *See* I R.

126–27. The district court, however, did not state its reasons for denying the claim. *See id.* at 129–32.

This argument fails because the property subject to forfeiture under the controlled substances statute, as set forth in Utah Code Ann. § 58–37–13(1), does not incorporate by reference drug paraphernalia as defined in the Utah Act. *Cf.* Utah Code Ann. § 58–37–13(1)(h) (incorporating by reference all imitation controlled substances as defined in the Imitation Controlled Substances Act). Thus, the deficiency in the forfeiture clause of the Utah Act cannot be remedied by reference to this other statute. We hold, therefore, that the State's failure to provide for a hearing for persons who lose alleged drug paraphernalia pursuant to § 6 of the Utah Act violates the Due Process Clause of the Fourteenth Amendment.

■ The question remains whether the invalidity of § 6 means that the entire Act must be held invalid, or whether the unconstitutional provision may be severed and the remainder of the Act saved. We feel the answer is made clear by Utah law. The test for severability is stated in *Salt Lake City v. International Association of Firefighters, Locals 1645, 593, 1654 & 2064*, 563 P.2d 786, 791 (Utah 1977), as follows:

> Severability, where part of an act is unconstitutional, is primarily a matter of legislative intent. Even though a savings clause exists ..., where the provisions are interrelated, it is not within the scope of the court's function to select the valid portions of the act and make conjecture the legislature intended they should stand independent of the portions which are invalid. [Footnote omitted.]

*See also Buckley v. Valeo*, 424 U.S. 1, 108–09, 96 S.Ct. 612, 677–78, 46 L.Ed.2d 659 (1976); *United States v. Jackson*, 390 U.S. 570, 585–91, 88 S.Ct. 1209, 1218–21, 20 L.Ed.2d 138 (1968); *Champlin Refining Co. v. Corporation Commission of Oklahoma*, 286 U.S. 210, 234–35, 52 S.Ct. 559, 564–65, 76 L.Ed. 1062 (1932); *Dorchy v. Kansas*, 264 U.S. 286, 289–91, 44 S.Ct. 323, 324–25, 68 L.Ed. 686 (1924). Here we have such a savings clause in the statute which provides:

> If any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

Utah Act § 7, *quoted in* 6A Utah Code Ann. 307–08 (Supp.1983) (annotations).

We are satisfied that the forfeiture provision is not so interwoven with the remainder of the statute that the other portions of the Act cannot stand alone. Therefore, we hold that § 6 cannot be upheld because of the violation of the Due Process Clause of the Fourteenth Amendment but that the remainder of the statute is valid.

## VI

### *Conclusion*

In sum, the Utah Act is not overbroad or impermissibly vague, and does not infringe on plaintiffs' commercial speech rights. Further, the statute bears a rational relationship to a legitimate state interest. Its only constitutional defect is the failure of § 6 to provide a due process hearing in connection with forfeitures. However, that invalid provision may be severed and the remainder of the statute is valid.

Accordingly, the judgment is affirmed in all respects except as to the ruling upholding the forfeiture provision of § 6 of the Utah Act; the latter ruling is reversed and the case is remanded for entry of judgment in accord with this opinion.

### APPENDIX

#### CHAPTER 37a

#### DRUG PARAPHERNALIA

**58–37a–1. Short title.** This chapter shall be known and may be cited as the "Utah Drug Paraphernalia Act."

**58–37a–2. Purpose.** It is the intent of this chapter to discourage the use of narcotics by eliminating paraphernalia designed for processing, ingesting, or otherwise using a controlled substance.

**58–37a–3. "Drug paraphernalia" defined.** As used in this chapter:

"Drug paraphernalia" means any equipment, product, or material used, or intended for use, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, package, repackage, store, contain, conceal, inject, ingest, inhale, or to otherwise introduce a controlled substance into the human body in violation of chapter 37, title 58, and includes, but is not limited to:

(1) Kits used, or intended for use, in planting, propagating, cultivating, growing, or harvesting any species of plant which is a controlled substance or from which a controlled substance can be derived;

(2) Kits used, or intended for use, in manufacturing, compounding, converting, producing, processing, or preparing a controlled substance;

(3) Isomerization devices used, or intended for use, to increase the potency of any species of plant which is a controlled substance;

(4) Testing equipment used, or intended for use, to identify or to analyze the strength, effectiveness, or purity of a controlled substance;

(5) Scales and balances used, or intended for use, in weighing or measuring a controlled substance;

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannited, dextrose and lactose, used, or intended for use to cut a controlled substance;

(7) Separation gins and sifters used, or intended for use to remove twigs, seeds, or other impurities from marihuana;

(8) Blenders, bowls, containers, spoons and mixing devices used, or intended for use to compound a controlled substance;

(9) Capsules, balloons, envelopes, and other containers used, or intended for use to package small quantities of a controlled substance;

(10) Containers and other objects used, or intended for use to store or conceal a controlled substance;

(11) Hypodermic syringes, needles, and other objects used, or intended for use to parenterally inject a controlled substance into the human body; and

(12) Objects used, or intended for use to ingest, inhale, or otherwise introduce marihuana, cocaine, hashish, or hashish oil into the human body, including but not limited to:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(b) Water pipes;

(c) Carburetion tubes and devices;

(d) Smoking and carburetion masks;

(e) Roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(f) Miniature cocaine spoons and cocaine vials;

(g) Chamber pipes;

(h) Carburetor pipes;

(i) Electric pipes;

(j) Air-driven pipes;

(k) Chillums;

(*l*) Bongs; and

(m) Ice pipes or chillers.

**58–37a–4. Considerations in determining whether object is drug paraphernalia.** In determining whether an object is drug paraphernalia, the trier of fact, in addition to all other logically relevant factors, should consider:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to a controlled substance;

(3) The proximity of the object, in time and space, to a direct violation of this chapter;

(4) The proximity of the object to a controlled substance;

(5) The existence of any residue of a controlled substance on the object;

(6) Instructions whether oral or written, provided with the object concerning its use;

(7) Descriptive materials accompanying the object which explain or depict its use;

(8) National and local advertising concerning its use;

(9) The manner in which the object is displayed for sale;

(10) Whether the owner or anyone in control of the object is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(11) Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

(12) The existence and scope of legitimate uses of the object in the community; and

(13) Expert testimony concerning its use.

**58–37a–5. Unlawful acts.** (1) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body in violation of this chapter. Any person who violates this subsection is guilty of a class B misdemeanor.

(2) It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, any drug paraphernalia, knowing that the drug paraphernalia will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce a controlled substance into the human body in violation of this act. Any person who violates this subsection is guilty of a class A misdemeanor.

(3) Any person 18 years of age or over who delivers drug paraphernalia to a person under 18 years of age who is three years or more younger than the person making the delivery is guilty of a third degree felony.

(4) It is unlawful for any person to place in this state in any newspaper, magazine, handbill, or other publication any advertisement, knowing that the purpose of the advertisement is to promote the sale of drug paraphernalia. Any person who violates this subsection is guilty of a class B misdemeanor.

**58–37a–6. Seizure—Forfeiture—Property rights.** Drug paraphernalia is subject to seizure and forfeiture and no property right can exist in it.